# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| MAFCOTE, INCORPORATED, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. C-01-02-411 |
| | ) | |
| V. | ) | JUDGE SANDRA S. BECKWITH |
| | ) | ( X. J.; HOGAN, M.J.) |
| CONTINENTAL CASUALTY | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes Defendant, Continental Casualty Insurance Company (hereinafter "Continental"), by and through counsel, and for its Motion for Summary Judgment Against Mafcote, Incorporated (hereinafter "Mafcote"), submits the following Memorandum of Law and accompanying Affidavit of Frederic R. Mindlin with exhibits attached thereto pursuant to the Court's Scheduling Order.

Respectfully Submitted,

s/ Frederic R. Mindlin

Frederic R. Mindlin (pro hac vice)
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, NY 10004
(212) 804-4200
s/ John C. Scott
JOHN C. SCOTT, #0029518
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500
Attorneys for Defendant
CONTINENTAL CASUALTY INSURANCE
COMPANY

**TABLE OF CONTENTS**

Page

Table of Authorities ............................................................................................................. ii-iii

PRELIMINARY STATEMENT ........................................................................................... 1-2

FACTUAL BACKGROUND ................................................................................................. 6

ARGUMENT .......................................................................................................................... 7

POINT I
CHOICE OF LAW ................................................................................................... 7

POINT II
THE STANDARD FOR SUMMARY JUDGMENT ............................................... 9

POINT III
MAFCOTE HAS NOT ESTABLISHED A BUSINESS INTERRUPTION
AND EXTRA EXPENSE CLAIM UNDER A PLAIN READING OF THE POLICY ........ 9

    A.    Ohio Law Requires that Mafcote Establish a Covered Loss
        Under a Plain Reading of the Policy

    B.    Miami Wabash Did Not Incur Business Interruption and Extra Expense
        Loss As A Result of the Accident to the Boiler

    C.    Mafcote's Claim Is Properly Considered A Contingent Business
        Interruption Loss For Which the Policy Does Not Provide Coverage

POINT IV
THE POLICY DOES NOT COVER CLAIM EXPENSES

CONCLUSION ..................................................................................................................... 10

i

## TABLE OF AUTHORITIES

FEDERAL CASES

Int'l Ins. Co. v. Stonewall Ins. Co., 863 F.Supp. 599 (S.D. Ohio 1994) ........................................ 7

Jamhour v. Scottsdale Ins. Co., 211 F.Supp.2d 941, 980 (S.D. Ohio 2002) ................................... 8

United States v. Poling, 73 F.Supp.2d 882 (S.D. Ohio 1999) ........................................................ 9

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) ...................................................................... 9

Farmers Bank & Trust Co. v. Transamerica Ins. Co., 674 F.2d 548 (6th Cir. 1982) .................. 11

Sherwin-Williams Co. v. The Ins. Co. of the State of PA., 863 F.Supp. 542 (N.D. Ohio, 1994) 11

St. Marys Foundry, Inc. v. Employers Ins. of Wausau, 332 F.3d 989, 993 (6th Cir. 2003) ........ 12

Ramada Inn Ramogreen, Inc.v Travelers Indem. Co., 835 F.2d 812, 814 (11th Cir. 1988)........13

Swedish Crucible Steel Co. v. Travelers Indem. Co., 387 F.Supp. 231, 233 (E.D Mich. 1974) . 13

Pentair, Inc. v. American Guarantee & Liability Ins. Co., 2003 WL 21804874 (D. Minn. 2003)15

STATE CASES

Rutlin v. National Union Fire, 2003 WL 1955836 * 3 (S.D. Ohio 2003) .................................... 9

Chicago Title Ins. Co. v. Huntington Nat'l Bank, 87 Ohio St. 3d 270, 719 N.E.2d 955 (1999)  11

Inland Rivers Service Corp. v. Hartford Fire Ins. Co., 66 Ohio St.2d 32, 418 N.E.2d 1387 (1981)11

Sterling Merchandise Co. v. Hartford Fire Ins. Co., 30 Ohio App.3d 131, 506 N.E.2d 1192.......11

Sturgeon v. Dubois, 2001 WL 803898 (Ohio App. 10 Dist. 2001) ........................................... .11

Gregory v. Cont'l Ins. Co., 575 So.2d 534, 540 (Miss. 1990) ................................................ 13,14

Protection Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp., 164 Orr. App. 385, 992 P.2d 479, 483
(1999) ......................................................................................................................................... 14

Pioneer Chlor Alkali Co., Inc. v. Royal Indemnity Co., 879 S.W.2d 920 (Tex. Ct. App. 1994) 16

STATUTE

Fed.R.Civ.P. Rule 56(c) ................................................................................................................. 9

OTHER AUTHORITIES

Trieschmann, Wiening, Hedges, Trupin, and Flitner, Commercial Property Insurance and Risk
    Management, Vol. 1 (4th Ed.) at p. 259. Warsaw Convention, October, 29, 1934, Art. 1, 49
    Stat. 3000 ................................................................................................................................. 15

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MAFCOTE, INCORPORATED,   ) | |
| ) | |
| ) | |
| Plaintiff,   ) | Civil Action No. C-01-02-411 |
| ) | |
| V.   ) | JUDGE SANDRA S. BECKWITH |
| ) | ( X. J.; HOGAN, M.J.) |
| CONTINENTAL CASUALTY   ) | |
| INSURANCE COMPANY   ) | |
| ) | |
| Defendant.   ) | |
| ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CONTINENTAL CASUALTY COMPANY

### PRELIMINARY STATEMENT

Defendant Continental Casualty Company ("Continental") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. Rule 56 for summary judgment with respect to the Complaint filed by Mafcote, Incorporated ("Mafcote"), since there are no triable issues of fact and resolution of this dispute can be resolved by application of the relevant law to facts. We respectfully refer the Court to the accompanying Affidavit of Frederic R. Mindlin, sworn to November 3, 2003 ("Mindlin Affidavit"), and its attached exhibits.

This action was brought by Mafcote to recover $255,697.61 under its Continental Boiler and Machinery policy for Business Interruption Loss and Extra Expense arising out of a boiler accident that occurred on July 16, 2001 at the Franklin, Ohio location of Mafcote's subsidiary, Miami Wabash Paper, llc ("Miami Wabash"). Of the damages claimed, $220,697.61 represent costs for purchases of paper products made by Royal Consumer Products, llc, ("Royal"), another subsidiary of Mafcote, which is located in Louisville, Kentucky. The Royal facility in Kentucky, however, was

not the location of the accident to the boiler and, in fact, was not damaged.  Under the terms and

conditions of the Policy, there is no recovery for Business Interruption and Extra Expense Actual

Loss at a location which does not incur direct physical damage to covered property.

An additional $35,000 is claimed for costs that Mafcote alleges to have incurred or expects

to incur in the future for claim preparation expenses. The Policy does not provide coverage for claim

expenses voluntarily undertaken by Mafcote.

## FACTUAL BACKGROUND

### The Continental Policy

Continental issued Boiler and Machinery policy no. BM 1098742493 to Mafcote (the

"Policy"), for a one year term commencing on June 8, 2001.  The Policy covers multiple locations

for a $50,000,000 limit "for all loss or damage that results from any 'one accident'" subject to

various sublimits that are not applicable here. The Policy at Form BM00250695 at ¶ F.4 defines the

term "one accident" as follows:

.      **"One Accident" means**:

If an initial "accident[1]" causes other "accidents" all will be considered
"one accident". All "accidents" at any one location that manifest
themselves at the same time and are the result of the same cause will
be considered "one accident".

In addition to coverage for direct physical loss or damage, the Policy at Form BM00250695

also provides for business interruption and extra expense as follows:

---

[1]"Accident" means a sudden and accidental breakdown of the "object" or a part of the
"object".

**COMBINED BUSINESS INTERRUPTION AND EXTRA EXPENSE ACTUAL LOSS**

\*    \*    \*

A.    COVERAGE

    1.    We will pay for your "Actual Loss" and "Extra Expense" during the "Period of Restoration" provided all of the following requirements are met:

        a.    The "Actual Loss" and "Extra Expense" must be caused solely by an "accident" to an "object";

        b.    The loss must be as a result of direct physical damage to Covered Property;

        c.    The "accident" must occur during the time this coverage is in force;

        d.    The "object" that has the "accident" must be:

            (1)    Specified as covered in the Combined Business Interruption and Extra Expense Schedule;

            (2)    At a "location" shown in the Combined Business Interruption and Extra Expense Schedule; and

            (3)    In use or connected and ready for use.

    2.    We will pay:

        a.    Your "actual loss" from a total or partial interruption of business; and

        b.    The "Extra Expense" you necessarily incur to operate your "Business" as nearly "normal" as practicable during the "Period of Restoration" following an "accident".

We will consider the actual experience of your business before the "accident" and the probable experience you would have had without the "accident" in determining the amount of our payment.

\*    \*    \*

The following entities are the named insureds under the Policy:

3

MAFCOTE, INC.
MILLEN INDUSTRIES, INC.
MIAMI VALLEY PAPER, INC.
DORADO CARTON COMPANY, ICN.
ROYAL CONSUMER PRODUCTS, llc
MAFCOTE INTERNATIONAL, llc
MIAMI WABASH PAPER, llc
FC MEYER INTERNATIONAL, llc
SONBURN, llc
EE MAFCOTE ROMANIA SRL
PAPEL SANTINADO MAFCOTE, S.A. de C.V.
BLEEKER ASSOCIATES
FC MEYER INTERNATIONAL, INC.
PARTY PLAY, INC.
SONBURN, INC.
SONBURN II, INC.

**The Accident**

As set forth in the accompanying affidavit of Frederic R. Mindlin, sworn to November 3, 2003, ("Mindlin Aff."), Continental was notified on August 14, 2001 by Mafcote of an accident to a boiler at Miami Wabash location on July 16, 2001. Initially, Mafcote had notified its prior insurance carrier of the boiler accident and did not realize it had notified the wrong carrier until August 14, 2001 when it notified Continental. A Continental investigator inspected the boiler on August 17, 2001 and determined that the cause of the accident was the accumulation of soft scale sludge on the waterside surface of the boiler which resulted in the overheating of the boiler shell.

Continental concluded that the damage to the boiler was sudden and accidental, that there was physical damage with no evidence of a furnace explosion and that the boiler would require repair in order to return to operations. Schweitzer Brothers Co., Inc. determined that it could repair the boiler at a cost of $16,000. Although the cost to repair the boiler was covered under the Policy, the repair cost did not exceed the applicable $25,000 deductible. Accordingly, Continental did not make any payment for the boiler repair. While the damaged boiler was undergoing repairs Miami

4

Wabash rented a temporary boiler which had a larger capacity than the damaged boiler. The cost of that rental is covered under the Policy as an extra expense. The total cost of the rental boiler based on documentation provided by Mafcote was $32,996. Continental paid Mafcote $21,116.00 for the costs of the rental boiler after applying the deductible for extra expense claims (2 times 100% of the Average Daily Value of Production as calculated by Mafcote). Mafcote accepted this payment without protest.

**Mafcote's Business Interruption and Extra Expense Claim**

According to the President of Mafcote, Steven A. Schulman, Miami Wabash's operations involve the coating of paper and paper board products. The process of coating paper and paper board products involves the use of an electronically controlled machine known as a steam foil which operates on steam. As a result of the accident on July 16, 2003, Mafcote claims that Miami Wabash was unable to process the certain grades of paper coated through the steam foil process.

As set forth in Mafcote's complaint, $220,697.61 is claimed as an Extra Expense for purchases of paper products that were required "because of the inability of to produce certain coated paper products which require steam processing from August 13, 2001 through August 15, 2001" at Miami Wabash. In support of Mafcote's claim, Mr. Schulman testified that the entire $220,687.61 was spent by Royal, another subsidiary of Mafcote. Royal needed certain coated paper to fill orders for its customers. When Royal could not get that paper from Miami Wabash, it purchased the paper from third-party competitors of Miami Wabash, at a much higher cost. The claim represents the cost difference between what Royal actually paid and what it would have paid if Miami Wabash could have supplied the paper.

During Mr. Schulman's deposition, invoices identifying purchases made by Royal to third party competitors of Miami Wabash were identified and entered into evidence. Exhibit 4 to the

5

Mindlin Affidavit shows purchases made by Royal a paper products manufactured NuCote, a competitor of Miami Wabash. Schedule 1 of Exhibit 4 summarizes the total cost of purchases from Royal to NuCote as $42,918.76. Exhibit 5 to the Mindlin Affidavit evidences purchases made by Royal to Permalife, another competitor of Miami Wabash. According to Schedule 2 of Exhibit 5, the cost of Royal's purchases of paper products from Permalife totaled $274,937.86. Exhibit 6 to the Mindlin Affidavit shows purchases of paper products by Royal from Folex Imaging in the amount of $103,262.82. The claim submitted by Mafcote in the amount of $220,697.61 is the difference between the amount actually paid by Royal for purchases from NuCote, Permalife and Folex Imaging and the amount Royal would have paid if it could have purchased paper products from Miami Wabash.

Mr. Schulman testified that there was no property damage or boiler damage of any kind at Royal and that the only property damage incurred that incurred was the damage to Miami Wabash's boiler  Most importantly, Mafcote has presented no evidence either in its claim to Continental, through discovery or during the deposition of Mr. Schulman that Miami Wabash incurred a actual loss of business income or any extra expense as the result of the accident to the boiler at that location on July 16, 2001 other than the cost of the rental boiler for which Continental has already made payment. This is not surprising since the time period between when Continental was notified and the start up of the rental boiler is only one day. All purchases of paper products evidenced by Mafcote were made by Royal from third party competitors of Miami Wabash. It is undisputed that the accident to the boiler occurred at the Miami Wabash location and not at the Royal plant.

6

## ARGUMENT

### POINT I

### CHOICE OF LAW

It is well established that a "federal court sitting in diversity must apply the law of conflicts

of the state in which it sits." Int'l Ins. Co. v. Stonewall Ins. Co., 863 F.Supp. 599 (S.D. Ohio 1994).

Under an Ohio choice of law analysis, which this Court should follow, Ohio law governs the

interpretation of the Policy. As set forth by the court in Int'l Ins. Co. v. Stonewall Ins. Co.: Ohio

has adopted the "most significant contacts" rule as set forth in Restatement (Second) of Conflicts

§188 to determine which state's law controls as follows:

> Restatement (Second) of Conflict of Laws §188 states that in determining the state
> whose law should be applied to a contract, a court should first apply the general
> conflict of laws provisions of Restatement (Second) of Conflict of Laws §6. Section
> 6 states that:
>
>> (1)    A court, subject to constitutional restrictions, will follow a statutory
>> directive of its own state on choice of law.
>>
>> (2)    When there is no such directive, the factors relevant to the choice of
>> applicable rule of law include
>>
>> (a) the needs of the interstate and international systems;
>>
>> (b) the relevant policies of the forum
>>
>> (c) the relevant policies of other interested states and the relative
>> interests of those states in the determination of the particular issue;
>>
>> (d) the protection of justified expectations;
>>
>> (e) the basic policies underlying the particular field of law;
>>
>> (f) certainty, predictability, and uniformity of result
>>
>> (g) ease in the determination and application of the law to be applied
>> Restatement (Second) of Conflicts §6 (1971); National Union Fire
>> Ins. Co. v. Watts, 963 F.2d at 151 (applying Ohio choice of law

7

rules).

Section 188 then articulates that the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to the issue include:

(a) place of contracting,

(b) place of negotiations of the contract,

(c) place of performance

(d) location of the subject matter of the contracts, and

(e) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

Id. at 602.

Here, Continental, an Illinois corporation with its principal place of business in Illinois, issued the Policy to Mafcote, a Delaware corporation with its principal place of business in Connecticut through its authorized agent, Genatt Associates, Inc., a New York corporation. The policy covers multiple locations across the United States although Miami Wabash, for which Mafcote has made a claim, is located in Franklin, Ohio.

As applied to insurance contracts, the Ohio courts have not put a great emphasis on the place of contracting or the place of negotiation. "The place of contracting is a relatively insignificant contact. The place of negotiation . . . is of less importance where there is no one single place of negotiation and agreement, as for example, when the parties do not meet but rather conduct their negotiations from separate states by mail or telephone." Jamhour v. Scottsdale Ins. Co., 211 F.Supp.2d 941, 980 (S.D. Ohio 2002) citing Int'l Ins. Co. v. Stonewall Ins. Co. at 604.

The location of the subject matter here is in Franklin, Ohio. "Ohio's legitimate expectation is that its insured companies would receive the coverage for which they bargained and paid." Int'l

8

<u>Ins. Co.</u> at 604. Thus, it would appear that Ohio law would apply in this case.

Ohio courts have held, however, that "where there is no difference between the laws of the forum state another state, a court need not decide the choice of law issue." <u>United States v. Poling</u>, 73 F.Supp.2d 882 (S.D. Ohio 1999). The law regarding business interruption claims such as the claim Mafcote has submitted, however, is not in conflict across jurisdictions. Accordingly, the Court should not be limited to Ohio law in this matter, but should apply the law with respect to business interruption coverage as it is uniformly applied across jurisdictions.

## POINT II

### THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(c).

The party moving for summary judgment "has the initial burden of informing the court of he basis for its motion, and identifying those portions of the pleadings, depositions and affidavits which it believes demonstrate the absence of a general issue of material fact." <u>Rutlin v. National Union Fire</u>, 2003 WL 1955836 * 3 (S.D. Ohio 2003) <u>citing</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).

The Court in <u>Rutlin</u> stated:

> Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely assert reassert its previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Rule 56 requires the nonmoving party go beyond the pleadings" and present some type of evidentiary

9

material in support of its position. <u>Celotex Corp.</u>, 477 U.S. at 324, 106 S.Ct. 2548.

The facts of this matter are not in dispute. Mafcote has set forth in its pleadings, deposition testimony and documents submitted in discovery that the damage to the boiler occurred at Miami Wabash while the claim for extra expense claim arose solely out of purchases made by Royal from third parties. The terms and conditions of the Policy unequivocally state that any business interruption loss must be caused by an accident to an object as a result of direct physical damage to Covered Property. Here, the accident to the object occurred at Miami Wabash. Any extra expense loss incurred by Royal is not the result of an accident to an object at the Royal facility and therefore, is not covered.

**POINT III**

**MAFCOTE'S HAS NOT ESTABLISHED A BUSINESS INTERRUPTION AND EXTRA EXPENSE CLAIM UNDER A PLAIN READING OF THE POLICY**

In this action, Mafcote seeks to recover $220,697.61 for the Extra Expense that Royal incurred as a result of the boiler accident at Miami Wabash on July 16, 2001. In deposition testimony Mafcote acknowledged that apart from the cost of the rental boiler for which Continental has already made payment, Miami Wabash did not incur any actual loss or extra expense as a result of the boiler accident. Rather, Mafcote bases solely bases its claim under the Policy's Combined Business Interruption and Extra Expense Actual Loss form on purchases of paper products made by Royal from third party competitors of Miami Wabash that Royal needed to fill its orders. Although Royal is also a named insured under the Policy, it is a separate entity from Miami Wabash. Most importantly, the business interruption and extra expense actual losses claimed on behalf of Royal are not covered under the Policy inasmuch as the "accident" to an "object" which was the "result of

10

direct physical damage to covered property" did not occur at the Royal facility.

**A.     Ohio Law Requires that Mafcote Establish a Covered Loss
Under a Plain Reading of the Policy**

An insured's burden of showing facts sufficient to establish coverage under an insurance policy is well settled Ohio law and applies to all types of policies. Chicago Title Ins. Co. v. Huntington Nat'l Bank, 87 Ohio St. 3d 270, 719 N.E.2d 955 (1999) (insured did not sustain its burden of establishing coverage where policy covered plaintiff's liens but where plaintiff did not suffer any actual loss as a result of a foreclosure sale); Inland Rivers Service Corp. v. Hartford Fire Ins. Co., 66 Ohio St.2d 32, 418 N.E.2d 1381 (1981) (insured had burden of showing that loss to its vessel was covered under "perils of the sea clause"); Sterling Merchandise Co. v. Hartford Fire Ins. Co., 30 Ohio App.3d 131, 506 N.E.2d 1192 (1986) (insured required to prove forced entry for coverage under burglary provision in policy covering jewelry store); Farmers Bank & Trust Co. v. Transamerica Ins. Co., 674 F.2d 548 (6th Cir. 1982) (insured has burden of proving forgery under bankers blanket bond); Sturgeon v. Dubois, 2001 WL 803898 (Ohio App. 10 Dist. 2001) (insured required to show rental car was replacement under automobile policy).

Further, Ohio law requires that insurance contracts be given their natural and commonly accepted meaning. Sherwin-Williams Co. v. The Ins. Co. of the State of PA., 863 F.Supp. 542 (N.D. Ohio, 1994). The plain meaning of an insurance contract is ascertained by reading the contract as a whole and giving each word its appropriate meaning, if possible." Id. at 552.

> The fundamental rule of construction remains, however, that the 'goal in insurance policy interpretation is to ascertain the intent of the parties from a reading of the contract in its entirety, and to settle upon a reasonable interpretation of any disputed terms in a manner calculated to give the agreement its intended effect. Burris v. Grange Mut. Cos., 46 Ohio St.3d 84, 545 N.E.2d 83, 85 (1989). Thus, 'where the words used in a policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible to resort to

11

> construction. . ." Olmstead v. Lumbermens Mut. Ins. Co. 22 Ohio
> St.2d 212, 216, 259 N.E.2d 123, 126 (1970). See also Travelers
> Indemnity Co. v. Reddick, 37 Ohio St.2d 119, 121, 308 N.E.2d 454,
> 456 (1974); Karabin v. State Auto Mut. Ins. Co., 10 Ohio St.3d 163,
> 167, 462 N.E.2d 403, 406 (1984).

Id.

The issue in this case, therefore, is whether Mafcote has established a business interruption

or extra expense loss at Miami Wabash as a result of the accident to the boiler on July 16, 2001

under a plain reading of the terms and conditions of the Policy.

### B.    Miami Wabash Did Not Incur Business Interruption and Extra Expense Loss As A Result of the Accident to the Boiler

The terms and conditions of the Policy clearly require that any claim for business interruption

or extra expense losses must be caused by direct physical loss resulting from an accident to an object

at a covered location. See Form BM15330695 at ¶ A.1. In this case, the extra expense loss for

which claim is being made was incurred by Royal. Plaintiff admits that Royal did not sustain any

direct physical damage resulting from an accident to an object at its facility.

Ohio follows the principle adhered to across jurisdictions that business interruption losses

must result directly from an insured's covered property damage. St. Marys Foundry, Inc. v.

Employers Ins. of Wausau, 332 F.3d 989, 993 (6th Cir. 2003). St. Marys Foundry involved a claim

for loss of business income as a result of fire damage to wood patterns used to make metal castings.

Although the insured stored the patterns at its warehouse, they were the property of the insured's

customers. Employer's Business Property Policy covered loss of business income and extra expense

resulting from a covered loss. The policy also excluded coverage for patterns not owned by the

insured. The court found that the insured was not entitled to recover for loss of business income as

a result of the damage to the patterns because under a plain reading of the policy, damage to the

12

patterns was not a covered loss. In support of its decision, the court cited the following cases from

other jurisdictions which are particularly applicable here because they involve claims for business

interruption losses at a result of property damage at separate locations:

> See e.g., Ramada Inn Ramogreen, Inc.v Travelers Indem. Co., 835
> F.2d 812, 814 (11th Cir. 1988) (finding business interruption policy
> did not cover loss of patronage at an insured hotel resulting from a
> fire on non-covered premises of the insured's restaurant (applying
> Florida law); Swedish Crucible Steel Co. v. Travelers Indem. Co.,
> 387 F.Supp. 231, 233 (E.D. Mich. 1974) (finding business
> interruption insurance coverage only applied when property damage
> covered under the subject policy caused business interruption loss)
> (applying Michigan law); Gregory v. Cont'l Ins. Co., 575 So.2d 534,
> 540 (Miss. 1990) (finding no coverage for business interruption
> claims resulting from damage to property at a non-covered location);
> Protection Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp., 164 Orr.
> App. 385, 992 P.2d 479, 483 (1999) (finding insured unentitled to
> business interruption coverage, where threat of imminent flooding at
> local water treatment facility, and not physical loss or damage to
> covered property, caused the insured's water service to be temporarily
> suspended).

Id. at 993.

In Ramada Inn Ramogreen, the court specifically noted that the insured's restaurant which

was destroyed by fire was listed separately in the insurance policy, "evidencing the intent of the

parties to treat it as a separate entity." Id. at 814.

In Swedish Crucible Steel, the insured operated a plastics and foundry manufacturing

business which occupied eight separate buildings. A fire in Building 2 destroyed molds, dies and

patterns used in the foundry operations, however, the foundry operations occupied Building 1 which

was not damaged in the fire. The business interruption provision in the policy covered only Building

1 and required that physical damage was a necessary precedent to recovery. Thus, according to the

court, business interruption losses incurred by Building 1 were not covered because the property

damage occurred at Building 2. The court explained, "the basic thrust and intent of the policy is to

13

cover a specific piece of property against business interruption losses when it or its contents are physically damaged." Id. at 233.

In Gregory, the owner of a golf course claimed a business interruption loss after a hurricane damaged two of its buildings and its swimming pool. As a result of the hurricane, trees were also strewn across the golf course. The insurer denied the claim because the loss of business income was the result of the closure of the golf course and not the damage to the other structures. The court found that the insured could only recover for business losses resulting from the damage to the buildings.

Protection Mutual Ins. is also applicable here because it involved a business interruption claim resulting from the interruption of the insured's silicon wafer manufacturing plant when flooding caused the city's water treatment facility to shut down. The court found that the policy's Gross Earnings endorsement which covered "the Actual Los sustained by the Insured during the Period of Interruption directly resulting from physical loss or damage of the type insured against by this Policy, to property not otherwise excluded by this Policy" did not cover business income losses resulting from the consequences of flooding at the city's water treatment facility.

Similarly, the claim submitted by Mafcote for business interruption and extra expense loss incurred by Royal is not covered under the Policy's Combined Business Interruption and Extra Expense Actual Loss provision because that provision requires that the "Actual Loss" and "Extra Expense" claimed must be "caused solely by an 'accident' to an 'object'" as the "result of direct physical damage to covered property" and the object that has the accident must be at a listed location. See Form BM15330695 ¶ A.1. Mafcote admits that the only "accident" to an "object" occurred in Ohio at Miami Wabash, an entity separate from Royal. Similar to the situation in Ramada Inn Ramogreen, the Policy lists Mafcote's subsidiaries including Miami Wabash and Royal

14

separately. The policy also specifically provides coverage "for all damage that results from any one accident". According to the policy's definition of "one accident," "all accidents at any one location ... will be considered one accident." Thus, under a plain reading of the terms and conditions of the Policy read as a whole, the extra expense loss incurred by Royal was not the result of an "accident" to an "object" at the location where the loss was suffered. Continental has paid all of the extra expense incurred at Miami Wabash in Ohio.

### C.    Mafcote's Claim Is Properly Considered A Contingent Business InterruptionLoss For Which the Policy Does Not Provide Coverage

The claim that Mafcote is presenting here is akin to the claim submitted in <u>Protection Mutual</u> which the court held was a business income loss resulting from indirect damage to the city's water treatment facility. Insurance coverage for business interruption and extra expense as a result of loss or damage to other entities on which the insured's business depends is often referred to as contingent business interruption coverage. Most business interruption losses arise as a consequence of physical damage to property at the insured's own premises, but an insured can also suffer a business income loss because of physical damage to property at locations it does not own or control but on which the insured depends in some way. <u>See</u> Trieschmann, Wiening, Hedges, Trupin, and Flitner, <u>Commercial Property Insurance and Risk Management</u>, Vol. 1 (4th Ed.) at p. 259. Contingent business interruption coverage has been discussed in a recent District Court decision in Minnesota. <u>Pentair, Inc. v. American Guarantee & Liability Ins. Co.</u>, 2003 WL 21804874 (D. Minn. 2003).

<u>Pentair</u> involved the court's interpretation of a Contingent Time Element extension which provided coverage for loss resulting from damage to the "property of a supplier of goods and/or services from the Insured, or a receiver of goods and/or services from the Insured." <u>Id</u>. at * 2. This coverage is the very type that Royal needed in this case but did not have. In <u>Pentair</u>, the court found

15

that the Contingent Time Element provision did not apply to loss resulting from a power outage in Taiwan which prevented the insured's sole and exclusive suppliers from supplying products to the insured because the suppliers themselves did not incur property damage. The policy did not extend to damage to the supplier's power plant. The Contingent Time Element provision at issue in <u>Pentair</u> is illustrative of the type of coverage which would have insured against a business interruption and extra expense loss incurred by Royal arising out of  Miami Wabash's inability to provide paper products as a result of damage to its boiler.

Here, a typical contingent business interruption coverage provision such as those at issue in <u>Pentair</u> would have provided coverage for business interruption and extra expenses losses claimed on behalf of Royal as a result of damage to the boiler at its supplier, Miami Wabash.  In this case, unfortunately, the Policy does not provide coverage for contingent business interruption losses. Accordingly, Continental properly denied Mafcote's claim.

**POINT IV**

**THE POLICY DOES NOT COVER CLAIM EXPENSES**

In the Second Claim of the Complaint, Mafcote seeks to recover $15,000 for expenses incurred in the preparation of its claim and an additional $20,000 in expenses for accountants and auditors that it expects to incur.  There is no coverage under the Policy, however, for expenses incurred voluntarily by Mafcote for the preparation of its claim.

Where there is no provision in an insurance policy to reimburse an insured for its expenses in preparing a claim undertaken voluntarily, the insured cannot recover for the its costs it expends on claim adjusters, analysts or other types of experts. <u>Pioneer Chlor Alkali Co., Inc. v. Royal Indemnity Co.</u>, 879 S.W.2d 920 (Tex. Ct. App. 1994). <u>Pioneer</u> involved a claim brought by the insured under a boiler and machinery policy. The policy covered direct damage to covered property

caused by an accident to an object and included coverage for business interruption and extra expense actual loss. In addition to a claim for damages resulting from the release of chlorine after an incident at its plant, the Pioneer sought to recover the costs it had expended on engineers to investigate the cause of the loss. According to the Pioneer, Royal relied upon the engineer's data in denying the claim and therefore it should be required to reimburse it for the cost of the investigation. The court found "no merit in Pioneer's argument that Royal was required to pay for the investigation. Royal did not require Pioneer to hire the engineers. Royal asked for the information obtained and Pioneer freely gave that information. Royal hired its own engineering firm to review the tests and results obtained." Id. at 941.

Here, Mafcote has presented no documentation that it incurred any claim preparation expenses. Indeed, Mr. Schulman testified at his deposition that there were no records detailing how Mafcote arrived at the allegation that it spent $15,000 for claim preparation nor was there documentation detailing any amount claimed for claim preparation since the complaint was filed. Accordingly, Mafcote's Second Claim for expenses incurred in preparation of its claim should be denied.

## CONCLUSION

For the foregoing reasons, Continental is entitled to summary judgment in its favor and against Mafcote and such other and further relief as to the Court seems just and proper.

Dated: November 3, 2003

Respectfully submitted,


/s/  Frederic R. Mindlin
Frederic R. Mindlin (pro hac vice)
MOUND COTTON WOLLAN & GREENGRASS
One Battery Park Plaza
New York, NY 10004
(212) 804-4200
Fmindlin@moundcotton.com

-and-


/s/  John C. Scott
JOHN C. SCOTT, #0029518
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500
Attorneys for Defendant
CONTINENTAL CASUALTY INSURANCE
COMPANY

18

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon James M. Moore, Lindhorst & Dreidame, 312 Walnut Street, Suite 2300, Cincinnati, Ohio 45202-4091 by regular mail this 3rd day of November, 2003.

s/    Allison    J.    Gigante

Allison J. Gigante